819 F.2d 1138
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
LIBERTY OIL AND GAS COMPANY, a partnership; B.L. Ranson;
Plaintiffs- Appellants,
v.
EQUITABLE GAS COMPANY, a corporation; Defendant-Appellee.
 No. 86-3057.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 12, 1986.
Decided May 18, 1987.
 
 Before CHAPMAN, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and MAXWELL, United States District Judge for the Northern District of West Virginia, sitting by designation.
 Ray Edmond Ratliff, Jr., on brief, for appellant.
 Herbert G. Underwood (Gordon H. Copland; Steptoe and Johnson; Francis L. Warder, Jr., on brief), for appellee.
 PER CURIAM:
 
 
 1
 Summary judgment was granted by the district court in favor of Equitable Gas Company (Equitable), Defendant below and Appellee here. Liberty Oil and Gas Company and B.L. Ranson (Liberty), Plaintiffs below and Appellants here, have appealed the district court's decision. Finding no error in the district court's grant of Equitable's Motion for Summary Judgment, we affirm.
 
 
 2
 On May 13, 1970, October 28, 1970, and finally on May 20, 1971 the parties entered into agreements that involved certain described tracts of real estate owned or leased by Liberty. Equitable agreed "to take and pay for, during the six winter months from November 1st to May 1st of each year ..., all of the natural gas which may be produced ...; but during the six summer months from May 1st to November 1st of each year ... the Company shall be required to take gas only if and as needed."
 
 
 3
 The agreements provided that Liberty was to secure and pay for all necessary rights of way and, at Liberty's costs and expense, to lay and maintain in good condition a pipeline from producing wells to a connecting point, satisfactory to Equitable, on the pipeline of Equitable. The agreements further provided that Equitable was to make the connection of Liberty's pipeline into Equitable's pipeline. Liberty was in no event to make such pipeline connection without Equitable's written permission.
 
 
 4
 It is further noted that Equitable temporarily permitted delivery "at a point of connection on Weipenn Gas Company's transmission line with the understanding [however] that if at any future time the Company shall direct, all gas shall be delivered to a point of connection satisfactory to the Company [Equitable] on the Company's pipelines."
 
 
 5
 Gas was delivered by Liberty through the Weipenn pipeline and Equitable accepted the gas and made payments therefore through June 1977, at which time Equitable stopped receiving gas from Liberty's wells. The parties recognize Equitable had this right.
 
 
 6
 By letter dated September 2, 1977 from Augustine Mazzei, Jr., Assistant General Counsel for Equitable Gas, Liberty was advised of a proposed "Application of Bazzle Gas Company (Successor-in-Interest of Weipenn Gas Company) for Authority to Abandon Pipeline in Braxton County, West Virginia." The correspondence forwarded the application to be filed with the Federal Power Commission and advised Liberty:
 
 
 7
 Because the approval of said Application may have an impact on your gas deliveries to Equitable under the above-numbered Agreements and Accounts, Equitable believes you should be aware of such matter.
 
 
 8
 You have a right to protest the granting of the authority to abandon the above pipeline but, to do so, you must file a letter of protest with the Federal Power Commission, 825 North Capital Street, N.E., Washington, D.C. 20426.
 
 
 9
 The abandonment of the Weipenn Gas line was authorized on June 5, 1980. Liberty did not protest the abandonment of the pipeline although it is apparent that between November 1977 and January 1978 Liberty communicated with Equitable concerning the possibility of delivering gas in the future to Equitable.
 
 
 10
 Communications between the parties reflect that on June 25, 1979 Equitable sent a form letter to all of its suppliers, including Liberty, seeking the agreement of suppliers to accept a lower payment for gas delivered during summer months. Apparently Liberty did not respond. On September 22, 1981 the record reflects that Liberty was orally informed that the contracts had been cancelled as of July 1, 1981. On October 8, 1981 Liberty received a letter from Equitable stating that the contracts were cancelled as of June 15, 1981. This civil action followed on June 21, 1982 wherein Liberty seeks to recover for breach of its contracts with Equitable.
 
 
 11
 In challenging the district court's grant of summary judgment in favor of Equitable, Liberty urges that the record before the Court demonstrates that disputed, material facts are present and the district court erroneously applied the four year statute of limitations as provided for in West Virginia Code Sec. 46-2-725.
 
 
 12
 As to the material facts issue urged by Liberty, this Court finds the three contracts in question to be identical, except as to the description of the lands involved and the price to be paid for gas delivered. Each of these contracts contained, in at least six separate paragraphs, provisions which relate to the method of delivery of gas by Liberty to Equitable and, either expressly or implicitly, contemplate that the sale of gas so delivered to Equitable was to occur after its severance from the real estate by Liberty. The temporarily approved method of delivery of gas by Liberty through the pipeline of Weipenn Gas Company came to a conclusion when the Weipenn line went out of service after July 1977. It is notable that Equitable took no gas and made no payments for gas to Liberty after June 1977.
 
 
 13
 In short, the record reflects that Liberty's assertion as to disputed, material facts addresses the date the contracts were allegedly breached by Equitable. It is urged by Liberty that Equitable breached the agreement by the "shut in" of Liberty's wells in June, 1977 (although the agreements demonstrate that Equitable had the right to shut in the Liberty wells during summer months); it is also urged that Equitable had the duty to take and pay for gas beginning in November 1977. Further disputed, material facts urged by Liberty address the meaning of the terms of the agreements and Liberty insists the agreements were binding during the period of 1977 until October 1981.
 
 
 14
 This court concurs with the district court's opinion that the Uniform Commercial Code, Section 46-2-107(1), as it was then written, controls the transaction involving these parties. This target section of the Uniform Commercial Code provides:
 
 
 15
 A contract for the sale of timber, minerals or the like ... is a contract for the sale of goods within this article if they are to be severed by the seller but until severance a purported present sale thereof ... is effective only as a contract to sell.
 
 
 16
 Turning next to the Uniform Commercial Code Section challenged on this appeal, Sec. 46-2-725(1) in pertinent part provides:
 
 
 17
 An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.
 
 
 18
 The agreements between the parties required Equitable to take and pay for gas commencing on November 1 of each year. It is undisputed that Equitable did not take or pay for any gas during the period of November 1, 1977 through May 1, 1978.
 
 
 19
 The district court correctly determined that if Equitable breached its contractual obligation to Liberty it must have done so continuously between November 1, 1977 and May 1, 1978 and that this civil action, filed July 21, 1982, is well beyond the four year statute of limitations. This Court also concurs in the observation of the district court that while a breach by Equitable necessarily occurred on the first day of the mandatory period for taking gas, namely, November 1, 1977, giving the plaintiffs the full benefit of the entire winter period, as defined in the agreements, Liberty's cause of action accrued no later than May 1, 1978, therefore this civil action should have been instituted no later than May 1, 1982.
 
 
 20
 For the reasons expressed, the Court is of opinion that there were no disputed, material facts before the district court that precluded its action on Equitable's Motion for Summary Judgment; that the district court's interpretation of the pertinent sections of the Uniform Commercial Code was proper; and that under the facts as presented by the record in this civil action the application of the four year statute of limitations was appropriate.
 
 
 21
 AFFIRMED.